IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CONSTELLATION NEWENERGY, INC., | § § § | |
| *Plaintiff*, | § § § | CIVIL ACTION NO.   1:22-cv-7818 |
| v. | § § | |
| DEKALB CENTER LLC, | § § | |
| *Defendant*. | § § | |

## COMPLAINT

Plaintiff, Constellation NewEnergy, Inc. ("Constellation"), files this Complaint against Defendant, Dekalb Center LLC ("Dekalb"), and for cause would show as follows:

### I.       PARTIES

1.      Constellation is incorporated under the laws of the state of Delaware. Constellation's principal place of business is located at 1310 Point Street, Baltimore, Maryland 21231.

2.      Dekalb is a limited liability company with its principal office located at 500 Dekalb Avenue, Brooklyn, New York 11205. Upon information and belief, Joseph Heimann is the sole member of Dekalb. Mr. Heimann is a citizen of New York, who resides at 199 Lee Avenue, #201, Brooklyn, New York 11211.

### II.       JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Constellation and Dekalb, and the amount in controversy is in excess of $75,000.

4.      This Court has personal jurisdiction over Dekalb because Dekalb owns and operates a facility in New York. Dekalb's liability in this suit arises from and relates to its failure to pay

for materials and services supplied to its facility located in New York.

5.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the district where a substantial part of the events or omissions giving rise to this Complaint occurred. In addition, Dekalb consented to jurisdiction in the Eastern District of New York pursuant to section 9 of the General Terms and Conditions to its contract with Constellation:

> This Agreement will be governed by and interpreted in accordance with the laws of the state in which any Account is located, without giving effect to any conflicts of law provisions, and any controversy or claim arising from or relating to this Agreement will be settled in accordance with the express terms of this Agreement by a court located in such state.

The account at issue in this litigation is located in Brooklyn, New York. As such, venue is proper in the Eastern District of New York.

### III.     FACTUAL BACKGROUND

6.     Constellation is a competitive energy company providing power, natural gas, renewable energy, and energy management products and services for homes and businesses across the continental United States.

7.     Dekalb is Constellation's former customer. Dekalb owns and operates an office building located at 500 Dekalb Avenue, Brooklyn, New York 11205 (the "Facility").

8.     On or around June 19, 2020, Constellation and Dekalb executed an Electricity Supply Agreement – Fixed Price Solutions (the "Electricity Supply Agreement"). A true and correct copy of the Electricity Supply Agreement is attached hereto as **Exhibit 1**. Pursuant to the Electricity Supply Agreement, Dekalb agreed to purchase and receive, and Constellation agreed to sell and supply, all of Dekalb's electricity requirements for the Facility from August 24, 2020 through May 25, 2022.

9.     In addition to agreeing to purchase electricity and related services from

Constellation, Dekalb agreed to purchase, and have installed, energy efficiency equipment at the Facility. As such, Constellation and Dekalb executed a Customer Contract for EME Express Energy Services (the "EME Contract," collectively with the Electricity Supply Agreement, the "Contracts"). A true and correct copy of the EME Contract is attached hereto as **Exhibit 2**. Pursuant to the EME Contract, Dekalb agreed to purchase, and have installed, energy efficiency equipment at its Facility (the "Equipment"). Dekalb agreed to pay Constellation a total of $598,267 for the Equipment in fifty-nine monthly installments of $10,140.12.

10.     In accordance with the terms of the EME Contract, Dekalb hired EZ Energy Services LLC ("Contractor") to supply and install the Equipment at the Facility, pursuant to which Constellation would make a one-time material payment on Dekalb's behalf. On June 16, 2020, Dekalb and Contractor executed an agreement for the purchase and installation of the Equipment.

11.     On June 23, 2020, Dekalb signed a Material Acceptance Notice Form  that confirmed its acceptance of the Equipment from Contractor. Pursuant to the Material Acceptance Notice Form, Dekalb acknowledged that the notice was an unconditional, non-revocable confirmation triggering Constellation to release a one-time material payment on Dekalb's behalf to Contractor.

12.     After Dekalb signed the Material Acceptance Notice Form, Constellation paid Contractor a total of $505,000 for the supply and installation of the Equipment pursuant to the EME Contract.

13.     Constellation began invoicing Dekalb for amounts owed under the Electricity Supply Agreement for the electricity and related services supplied to Dekalb, and for amounts owed under the EME Contract for the Equipment installed at the Facility. Dekalb paid some of the invoices, but began defaulting on the payments in early 2022.

14.     On June 7, 2022, Constellation sent a demand letter to Dekalb for the outstanding amount due under the Electricity Supply Agreement and the EME Contract. Constellation advised Dekalb that it was in default under the Electricity Supply Agreement and the EME Contract as a result of its failure to pay its bills on time and in full. Constellation demanded that Dekalb pay the past due amount within five days of the date of the letter. Constellation advised Dekalb that it would terminate the Electricity Supply Agreement and the EME Contract if Dekalb failed to pay the amount due and owing under the Contracts. Dekalb, however, failed to pay the amount due and owing. As such, Constellation terminated the Electricity Supply Agreement and the EME Contract.

15.     On July 28, 2022, Constellation sent a final invoice to Dekalb for $477,418.27—the total amount due and owing for the electricity and related services and the Equipment sold and supplied to Dekalb in accordance with the Electricity Supply Agreement and the EME Contract. Dekalb failed to pay the invoice.

16.     On October 24, 2022, the undersigned attorneys sent a final demand letter on behalf of Constellation to Dekalb for the total amount due and owing under the Electricity Supply Agreement and the EME Contract. Dekalb, however, failed to respond to the demand letter.

17.     As of the date of the Complaint, Dekalb has failed to pay $477,418.27 for electricity and related services and energy efficiency equipment pursuant to the Electricity Supply Agreement and the EME Contract.

### IV.     CAUSES OF ACTION

**A.  Cause of Action No. 1: Breach of Contract**

18.     Constellation repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

19.     The Electricity Supply Agreement and the EME Contract are valid and enforceable

agreements between Constellation and Dekalb.

20.   Constellation is a proper party to bring suit for breach of the Electricity Supply Agreement and the EME Contract because it is a party to the Contracts.

21.   Constellation performed its contractual obligations pursuant to the Electricity Supply Agreement because it supplied Dekalb with its full requirements for electricity and provided related services to Dekalb. Constellation performed its contractual obligations pursuant to the EME Contract because it paid Contractor for the Equipment that was supplied and installed at the Facility. Constellation invoiced Dekalb for the electricity and related services and the Equipment in accordance with the Electricity Supply Agreement and the EME Contract.

22.   The EME Contract provides that Dekalb "shall pay the price for the EMEX Costs under this Contract in monthly installments" and that the "installment payment charges shall be included in Customer's monthly electricity supply invoices" from Constellation. The Electricity Supply Agreement provides that "[a]ll amounts charged are due in full within twenty (20) days of the invoice date". Section 3 of the Terms and Conditions of the Electricity Supply Agreement provides that Dekalb will be in default if it fails to pay its bills on time and in full.

23.   Dekalb breached the Electricity Supply Agreement and the EME Contract by failing to pay Constellation's invoices for electricity and related services and the costs of the Equipment installed at the Facility.

24.   Dekalb's breach of the Electricity Supply Agreement and the EME Contract has caused Constellation to suffer damages in an amount not less than $477,418.27.

**B.  Cause of Action No. 2: Unjust Enrichment**

25.   Constellation repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

26.     Pleading in the alternative, Dekalb has been unjustly enriched at the expense of Constellation for the electricity and related services supplied and the Equipment installed at the Facility. Constellation expected to be compensated for its supply of the electricity and related services and its payment of the Equipment installed for the benefit of Dekalb. Allowing Dekalb to retain these benefits is unjust and inequitable. As such, Dekalb has been unjustly enriched at the expense of Constellation.

## V.     ATTORNEYS' FEES

27.     Constellation repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

28.     As a result of Dekalb's actions and inactions, Constellation was compelled to retain the undersigned attorneys to bring and file suit. Constellation is entitled to recover its attorneys' fees pursuant to section 4 of the General Terms and Conditions to the Electricity Supply Agreement and section 5(c) of the EME Contract.

## VI.     PRE- AND POST-JUDGMENT INTEREST

29.     Constellation repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

30.     Constellation is entitled to recover pre- and post-judgment interest in accordance with law and equity as part of its damages herein. The Electricity Supply Agreement provides that, if Dekalb fails to make payments by the due dates set forth in the invoice, "interest will accrue daily on outstanding amounts from the due date until the bill is paid in full at a rate of 1.50% per month, or the highest rate permitted by law, whichever is less." As such, Constellation sues for recovery of pre- and post-judgment interest at the maximum amount allowed by law.

## VII.     CONDITIONS PRECEDENT

31.     Constellation repeats and re-alleges the allegations contained in the preceding

paragraphs as if fully set forth herein.

32.    All conditions precedent to Constellation's claims have occurred, been performed,

been waived, or otherwise been excused.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Constellation NewEnergy, Inc.,

respectfully requests that this Court enter a judgment in its favor and against Defendant, Dekalb

Center LLC, for:

a.    actual damages;

b.    pre-judgment and post-judgment interest at the highest legal maximum rate;

c.    attorneys' fees;

d.    costs of court; and

e.    all such other and further relief, general or special, at law or in equity, to which
Plaintiff may be entitled.

Dated this 22nd day of December, 2022.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:*/s/ Marcella M. Jayne*
    Marcella M. Jayne
    mjayne@foley.com
    90 Park Ave.
    New York, New York, 10016
    Telephone: (212) 682-7474
    Facsimile: (212) 687-2329

    OF COUNSEL:
    Scott D. Ellis
    *(pro hac vice application forthcoming)*
    sellis@foley.com
    Katherine M. Harrington
    *(pro hac vice application forthcoming)*
    kharrington@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002

    **ATTORNEYS FOR PLAINTIFF,**
    **CONSTELLATION NEWENERGY, INC.**